IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-134-KS

| | |
|---|---|
| ERIC LYDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security Administration,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Eric Lyde ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. On June 17, 2019, Plaintiff filed a notice of cases pending in the Fourth Circuit regarding the potential controlling authority of *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) (Notice of Subsequently Decided Controlling Authority [DE

---

[1] Plaintiff's complaint names Nancy A. Berryhill, in her official capacity as Acting Commissioner of the Social Security Administration, as the defendant to this action. Andrew M. Saul now holds the office of Commissioner and is hereby substituted as the defendant to this action. *See* Fed. R. Civ. P. 25(d).

#41]) to which Defendant responded in opposition on June 20, 2019 (Def.'s Resp. Opp. Pl.'s Notice of Subsequently Decided Controlling Authority [DE #43]). On June 24, 2019, the court held oral argument in the matter. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings [DE #25] is denied, Defendant's Motion for Judgment on the Pleadings [DE #36] is granted, and the Commissioner's decision is affirmed.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability, DIB, and Supplemental Security Income ("SSI")[2] on April 18, 2013, with an alleged onset date of December 31, 2011. (R. 18, 282–85, 286–90.) The applications were denied initially and upon reconsideration, and a request for hearing was filed. (R. 166–74, 174–78.) A hearing was held on June 18, 2015, before Administrative Law Judge ("ALJ") Carl B. Watson, who issued an unfavorable ruling on August 27, 2015. (R. 76–100, 136–56.) On December 10, 2015, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ to further evaluate the severity of Plaintiff's impairments and to give further consideration to Plaintiff's maximum RFC during the entire period at issue. (R. 163–64.) A second hearing was held before the ALJ on May 12, 2016, followed by an unfavorable ruling on August 26, 2016. (R. 18–42, 51–

---

[2] Although Plaintiff filed a claim for SSI, Plaintiff only requests review of the Commissioner's final decision denying Plaintiff's claim for a period of disability and DIB. (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #26] at 4.)

75.) The Appeals Council granted Plaintiff's request for review and, on June 5, 2018, issued a final agency decision denying benefits. (R. 1–9.) On July 27, 2018, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

## I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant

evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.    Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets [his] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

When assessing the severity of mental impairments, the Commissioner must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–

(c). This regulatory scheme identifies four broad functional areas in which the Commissioner rates the degree of functional limitation resulting from a claimant's mental impairment(s) in the claimant's abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3).[3] The Commissioner is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. § 416.920a(e)(3).

## III. Agency's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. The Appeals Council adopted the ALJ's findings in large part[4] and found Plaintiff "not disabled" under the Act. (R. 4–7.) At step one, the ALJ and the Appeals Council found Plaintiff had not engaged in substantial gainful employment since December 31, 2011, the alleged onset date. (R. 5, 20.) The ALJ found that Plaintiff's last insured date was March 30, 2016, and the

---

[3] At the time of the ALJ's decision, dated August 26, 2016, the paragraph B criteria listed the four broad functional areas as follows: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3) (eff. June 13, 2011 to Jan. 16, 2017). The Social Security Administration revised the medical criteria for evaluating mental disorders, effective January 17, 2017. Pursuant to the regulation's directive that the revised criteria be applied to claims pending as of the effective date, the Appeals Council's decision, dated June 5, 2018, applied the new paragraph B criteria.

[4] As noted above, the Appeals Council applied the new paragraph B criteria, which became effective after the ALJ's decision. The Appeals Council also found that Plaintiff met insured status through March 31, 2017, as opposed to March 30, 2016. (R. 20.)

Appeals Council found that Plaintiff met the special earnings requirement on December 31, 2011, the date Plaintiff stated he became unable to work, through March 31, 2017. (*Id.*) Next, the ALJ and the Appeals Council determined Plaintiff had the following severe impairments: "status post ligament repair to the right knee, early degenerative joint disease to both knees, obesity, diabetes, coronary artery disease with stent placement, hypertension, sleep apnea, posttraumatic stress disorder, and alcohol abuse." (R. 5–6, 21.) The ALJ found Plaintiff's back pain, hernia, alleged decreased hearing in his right ear, gastroesophageal reflux disease, right finger degenerative joint disease, status post right cuneiform fracture, degenerative facet arthropathy, and right middle finger injury to be non-severe impairments. (R. 21–22.)

At step three, the ALJ and the Appeals Council concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20, C.F.R. Part 404, Subpart P, App. 1. (R. 6, 22.) The ALJ analyzed Listings 1.02 (major dysfunction of a joint), 3.10 (sleep-related breathing disorders), 4.04 (ischemic heart disease), 12.06 (anxiety related disorders), and 12.09 (substance addiction disorders). Although there is no specific listing for obesity or diabetes, the ALJ analyzed Plaintiff's symptoms for both under listings for other body systems. (R. 23–24.) Prior to proceeding to step four, the ALJ and the Appeals Council assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the residual functional capacity

to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c) except that he is limited to simple, routine, repetitive tasks in an environment where changes are infrequent and are introduced gradually and where there is only casual interaction with the general public; and he can work in proximity to co-workers, but should work on tasks alone.

(R. 6, 25.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 27.) At step four, the ALJ and Appeals Council concluded Plaintiff is unable to perform past relevant work as a security officer, custodian, assistant department manager, or as a mechanic (R. 6, 40.) At step five, the ALJ and the Appeals Council concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, namely: handpacker, warehouse worker, and hospital cleaner. (R. 6, 41.) The Appeals Council concluded that Plaintiff was not disabled under the Act from December 31, 2011, the alleged onset date, through August 26, 2016, the date of the ALJ's decision. (R. 6, 42.)

IV.     Plaintiff's Arguments

A.     *Lucia* Notice

On June 17, 2019, Plaintiff filed a notice to inform the court that *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), may potentially control the court's decision in his case. In *Lucia*, the Supreme Court held that an administrative proceeding conducted by the Securities and Exchange Commission ("SEC") was invalid because the ALJ was

an "Officer of the United States" subject to the Appointments Clause and had not been constitutionally appointed. *Lucia*, 138 S. Ct. 2052-54.

To the extent *Lucia* may apply to Social Security Administration ALJs, Plaintiff has waived his right to argue that the ALJ in this case was not appointed in compliance with the Appointments Clause. *Lucia* was decided on June 21, 2018, prior to the filing of Plaintiff's complaint on August 8, 2018. Plaintiff did not raise any issue regarding the ALJ's appointment in his brief, filed with this court on February 12, 2019. As such, Plaintiff has forfeited his right to raise the issue in this action for judicial review. *See John M. v. Comm'r of Soc. Sec.*, No. 2:18-CV-29-JTR, 2019 WL 112778, at *3 n.1 (E.D. Wash. Jan. 4, 2019) (finding forfeiture of any *Lucia* claim where parties did not raise it in their briefing); *Bunton v. Colvin*, No. 1:10-CV-786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (determining that plaintiff waived issue by not raising it in his brief).

## B.  Issues Raised

Plaintiff argues the ALJ erred by failing to correctly weigh the treating and examining physicians' opinions of Plaintiff's limitations. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 19.) Specifically, Plaintiff argues the ALJ failed to correctly address the opinions of Dr. Richard Carlson, Dr. Linda Oldham Ikle, and Dr. Liza G. Schaffner. (*Id.* at 19–26.) The Commissioner contends that the ALJ properly evaluated the medical opinion evidence and that the ALJ's analysis is supported by substantial evidence. (Def.'s Mem. Supp. Mot. J. Pldgs [DE #37] at 6–16.)

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996).[5] Plaintiff's claim was filed before March 27, 2017. Thus, the applicable standard for evaluating medical opinion evidence is set forth in 20 C.F.R. § 416.927. Under § 416.927, a treating physician's opinion should generally be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 416.927(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro,* 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.* "Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." *Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. June 9, 2011) (citation omitted).

---

[5] This agency ruling was rescinded March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15,263 (Mar. 27, 2017).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. § 416.927(c)(2)–(5); *see also Parker*, 792 F. Supp. 2d at 894.

While an ALJ is under no obligation to accept any medical opinion, the weight afforded such opinions must nevertheless be explained. "The ALJ is not required to discuss all of these factors." *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), and *Munson v. Astrue*, No. 5:08-CV-110-D, 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)). "However, the ALJ must give 'good reasons' for the weight assigned to a treating source's opinion." *Ware*, 2012 WL 6645000, at *2 (citing 20 C.F.R. § 416.927(c)(2) and SSR 96-2p, 1996 WL 374188, at *5). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a

particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

## A. Consultative Psychiatrist Richard Carlson, M.D.

Following a September 2013 consultative psychiatric examination, Dr. Richard Carlson opined that Plaintiff "would have difficulty performing activities in a job and maintaining regular attendance and dealing with stresses in the workplace." (R. 721.) Plaintiff argues the ALJ incorrectly discounted this opinion. (Pl.'s Mem. Supp. J. Pldgs. at 20–21.) The Commissioner argues that Plaintiff mischaracterizes the ALJ's analysis and that the ALJ appropriately discounted Dr. Carlson's opinions because they were vague. (Def.s' Mem. Supp. J. Pldgs. at 8.)

"More weight should be given the more the physician presents relevant supporting evidence, the better he explains the opinion, and the more consistent the opinion is with the record as a whole." *Carlton v. Astrue*, No. 5:06-CV-372-FL, 2008 WL 681184, at *10 (E.D.N.C. Mar. 7, 2008) (citing *Patterson v. Barnhart,* No. 5:06-CV-37, 2007 WL 895136, at *8 (W.D. Va. Mar. 23, 2007)). "[C]onclusory and unsupported opinions . . . are tantamount to opinions on the ultimate issue of disability." *Id.* at *13.

Here, substantial evidence supports the ALJ's assignment of "partial weight" to Dr. Carlson's September 2013 opinion. (R. 29.) Dr. Carlson is not a treating physician, having only conducted a consultative examination of Plaintiff. Dr. Carlson noted that Plaintiff appeared anxious and has "flashbacks and nightmares, but no pertinent evidence of any delusions or hallucinations and is not suicidal now."

(R. 720.) Dr. Carlson concluded that "due to [Plaintiff's] current mental state, [Plaintiff] would have difficulty performing activities at a job, maintaining regular attendance, and dealing with stresses in the workplace." (R. 721.) Dr. Carlson also opined that with "more aggressive treatment, the PTSD symptoms could come under better control." (*Id.*) The ALJ found Dr. Carlson's conclusion that Plaintiff "can perform simple and repetitive tasks and accept instructions well" to be well supported by the evidence. (R. 29.) However, the ALJ assigned "little weight" to Dr. Carlson's finding that "Plaintiff would have difficulty performing activities at a job . . . as it is vague and does not specify the extent of the difficulty or the types of activities with which [Plaintiff] would have difficulty." (R. 29.) The ALJ further found Dr. Carlson's opinion did not quantify or provide the basis for his determination that Plaintiff would have difficulty maintaining regular attendance. The ALJ explained that he considered mental limitations in the RFC to avoid "factors that seem to cause stress for [Plaintiff], which is consistent with Dr. Carlson's finding that [Plaintiff] would have difficulty dealing with stresses in the workplace." (*Id.*)

The ALJ explained his reasoning for discounting Dr. Carlson's opinions, and substantial evidence supports his reasons. Accordingly, the ALJ did not err in assigning partial weight to Dr. Carlson's opinions.

### B. VA Psychologist Linda Oldham Ikle, Ph.D

Plaintiff contends the ALJ erred in discounting Dr. Linda Oldham Ikle's January 2014 opinion and by failing to explain what parts of Dr. Ikle's opinion were given favorable partial weight and how the RFC reflected the opinion. (Pl.'s Mem.

Supp. J. Pldgs. at 21.) The Commissioner argues that the ALJ identified multiple reasons for not affording Dr. Ikle's opinion more weight and that the RFC accommodated Plaintiff's limitations. (Def.'s Mem. Supp. J. Pldgs. at 9–10.)

The ALJ explained he was giving partial weight to Dr. Ikle's opinion because "it is based on a single examination of [Plaintiff] and it is not entirely consistent with longitudinal mental health treatment records." (R. 29.) Specifically, the ALJ found that Dr. Ikle's opinion regarding the severity of Plaintiff's mental health limitations was inconsistent with the extent and conservative nature of Plaintiff's treatment and evidence that his symptoms were generally adequately controlled when compliant with treatment. Partial weight was assigned following the ALJ's finding that "Dr. Ikle assessed [Plaintiff's] overall mental impairment as severe, as he appeared to be unable to hold a job at least partially due to his mental symptoms and his alcohol abuse." (*Id.*) The ALJ assigned little weight to Dr. Ikle's conclusion that Plaintiff was unable to hold a job because the determination of whether an individual is disabled or unable to work is reserved to the Commissioner. 20 C.F.R. § 404.1527. The ALJ considered Plaintiff's symptoms in determining the RFC and explained that he had restricted Plaintiff to "simple, routine, repetitive tasks in an environment where changes are infrequent and are introduced gradually . . . to accommodate [Plaintiff's] difficulty adapting to stressful circumstances and the generally distracting effects of his depressed mood, anxiety, and chronic sleep impairment." (R. 30.) To accommodate Plaintiff's difficulty with establishing and maintaining effective work and social

relationships, the ALJ further restricted Plaintiff to "casual interaction with the general public and working on tasks alone." (R. 30.)

The ALJ provided sufficient reasons for his assessment of Dr. Ikle's opinion, and his findings are supported by substantial evidence. Thus, the ALJ did not err in weighing Dr. Ikle's opinion.

### C. VA Treating Physician Liza G. Schaffner, M.D.

Plaintiff argues the ALJ erred in giving Dr. Liza G. Schaffner's opinion "little weight" and failing to identify medical evidence to support his findings. (Pl.'s Mem. Supp. J. Pldgs. at 21–22.) The Commissioner argues the ALJ sufficiently explained why he discounted Dr. Schaffner's opinion. (Def.'s Mem. Supp. J. Pldgs. at 10–12.)

Dr. Schaffner, a psychiatrist at the Veterans Administration, completed a two-page "Social Security Mental Residual Functional Capacity Assessment" in June 2015, stating that Plaintiff "carries a diagnosis of PTSD and even with treatment, he continues to exhibit significant impairments in social and occupational functioning." (R. 1262–63.) The assessment consisted of a printed form with checkboxes and instructions for Dr. Schaffner to "relate particular medical findings to any assessed limitation in capacity." (R. 1262.) Dr. Schaffner checked a box noting Plaintiff would not be able "to return to full time competitive employment at the present time." (*Id.*) Dr. Schaffner also checked multiple boxes finding Plaintiff to be markedly limited in certain tasks involving understanding and memory, sustained concentration and persistence, social interaction and "[t]he ability to set realistic goals or make plans independently of others." (R. 1262–63.) At the time of the June 2015 opinion, Dr.

Schaffner had seen Plaintiff in November 2014, January 2015, and April 2015. (R. 897, 911, 936.) Notably, the only "particular medical findings" included to support Dr. Schaffner's opinions are as follows: "GAF = 45. He carries a diagnosis of PTSD & even with treatment, he continues to exhibit significant impairments in social and occupational functioning." (R. 1263.)

The ALJ gave good reasons for assigning "little weight" to Dr. Schaffner's opinion. (R. 31–32.) First, Dr. Schaffner's opinion that Plaintiff would not be able to work full time is a determination of disability reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Secondly, the ALJ carefully considered Dr. Schaffner's June 2015 assessment, the frequency and duration of Dr. Schaffner's treatment of Plaintiff, and the medical evidence of record. The ALJ found Dr. Schaffner's assessment to be inconsistent with her treatment notes. The ALJ found that Plaintiff's records reflected routine and conservative mental health treatment, which showed his condition improved when compliant with treatment. (R. 32.) The ALJ explained:

> Overall, it appears that [Plaintiff] has experienced exacerbations of symptoms during periods that he is noncompliant with treatment and that his condition improves with compliance. Even during periods of noncompliance, [Plaintiff's] mental symptoms have not worsened to the point that he has required emergency or inpatient psychiatric treatment.

(R. 32.) Dr. Schaffner's opinion was based on a period of six months, whereas the ALJ's findings were based on the entire record, including hospital records from 1988 to 2016 and two state-agency psychological consultative examinations conducted in 2013 and 2014.

During the six-month period of treatment by Dr. Schaffner, Plaintiff reported overwhelming stress resulting from living with his former girlfriend and her three children, as well as his non-compliance with medication. (R. 569, 597, 603, 605, 911–12, 934, 936–37, 1005, 1010–1012, 1090.) In Plaintiff's November 2014 visit to Dr. Schaffner, Plaintiff felt "stressed out/overwhelmed" and stated his former girlfriend and her three children refused to move out. (R. 936–37.) Plaintiff reported the "only peace/solitude he has is during the day when . . . other individuals are not home." (*Id.*) Plaintiff stated that when others are at home, he feels stressed and overwhelmed from the noise. (R. 936.) Plaintiff reported he was not getting sufficient sleep and was "unsure how to cope." (*Id.*) In his January 2015 visit, Plaintiff noted improvement in his mood and sleep with adjusted medication doses. (R. 911.) Plaintiff acknowledged his stress at home would be temporary as his former girlfriend's "children will be out of the house within 2 years and then he will have the place to himself." (R. 912.) In his last visit to Dr. Schaffner in April 2015, Plaintiff reported "a lot of stress going on" and "[a]t home he gets antsy and feels so agitated he wants to punch the wall. Sometimes he feels so stressed he just wants to leave the house and sleep in his car— just to get some peace." (R. 898.) Although Plaintiff reported stress with his living situation, he stated he felt better when everyone left the house and "often wants to be left alone." (*Id.*) Plaintiff took walks to relieve his stress and reported that once his former girlfriend's children graduated, he would no longer be in his current situation. (*Id.*) These three visits provide a snapshot of Plaintiff's exacerbated symptoms but, as the ALJ found, it is inconsistent with the entire record.

The record does not reflect any visits to mental health providers following Plaintiff's last treatment by Dr. Schaffner in April 2015, nor did Plaintiff report any mental health symptoms in subsequent visits to other medical providers. (R. 1924, 1928, 1961, 1966, 1990.) In his July 2016 visit to New Hanover Regional Medical Center to treat his heart disease, Plaintiff was reported to be "pleasant," "in no acute distress," with "mood stable and appropriate." (R. 1995.)

Moreover, Dr. Schaffner's opinions are not in accord with those of the state-agency psychological consultants. As the ALJ noted:

> In September 2013, Clifford H. Charles, Ph.D., a State Agency psychological consultant, conducted a mental assessment, concluding that [Plaintiff] was able to understand and remember simple instructions, but would have moderate difficulty remembering detailed instructions. He could carry out very short and simple instructions, but would have moderate difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods. [Plaintiff] could cooperate on simple, routine tasks and transactions. He could generally accept directions and feedback. Although [Plaintiff] was not socially active beyond a small circle, he was able to relate appropriately. He would have limited ability to deal directly with the general public and would function best at tasks with modest social demands. [Plaintiff] was able to adapt to routine changes in the workplace but would struggle with a very stressful work setting. In February 2014, April L. Strobel-Nuss, Psy.D., a State Agency psychological consultant, assessed [Plaintiff's] mental functioning and affirmed Dr. Charles' opinion. Dr. Strobel-Nuss concluded that [Plaintiff] was capable of performing simple, routine, repetitive tasks.

(R. 32.)

In sum, the ALJ provided good reasons for discounting the opinions of Dr. Carlson, Dr. Ikle, and Dr. Schaffner, and these reasons are supported by the record. The Commissioner applied the correct legal standard in determining the weight to be

assigned the various medical opinions, and substantial evidence supports these findings.

### D. RFC Assessment

 Lastly, Plaintiff argues that the ALJ's "framing of mental restrictions . . . to simple, routine, and repetitive tasks and gradual changes and solo work activities and casual interactions" fails to address Plaintiff's limitations of solitude and threat avoidance. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 23–25.) The Commissioner argues that the ALJ's analysis is well supported by the record and should be affirmed. (Def.'s Mem. Supp. Mot. J. Pldgs. at 15–16.)

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1; see also 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir.

2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Simply put, this means an ALJ must "[s]how [her] work." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295). "An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review." *Parker v. Colvin*, No. 4:13-CV-38-FL, 2014 WL 2604282, at *3 (E.D.N.C. June 11, 2014).

The ALJ considered the medical records, Plaintiff's reported symptoms, and opinions from the various medical providers, and found that Plaintiff's statements

were "not entirely consistent with the medical evidence and other evidence in the record." (R. 27.) The ALJ found Plaintiff had the RFC to perform medium work while limited to "simple, routine, repetitive tasks in an environment where changes are infrequent and are introduced gradually and where there is only casual interaction with the general public; and he can work in proximity to co-workers, but should work on tasks alone." (R. 25.) The ALJ gave great weight to the state-agency psychological consultants who stated Plaintiff "would function best at tasks with modest social demands," because he found their opinions to be "well supported by the evidence of record and . . . based on the consultants' expertise and program knowledge." (R. 32, 110–12, 128–31.) Plaintiff contends that his issues "with other people is not only about interactions, it is about their presence, with proximity and location being further aggravating factors." (Def.'s Mem. Mot. J. Pldgs. at 23.) The ALJ accounted for Plaintiff's "difficulty adapting to stressful circumstances and the generally distracting effects of his depressed mood, anxiety, and chronic sleep impairment" by restricting Plaintiff to "simple, routine, repetitive tasks in an environment where changes are infrequent and are introduced gradually." (R. 29–30.) The ALJ explained Plaintiff's "difficulty establishing and maintaining effective work and social relationships" is accommodated in the RFC by the "restriction to casual interaction with the general public and working on tasks alone, but possibly in proximity to coworkers." (R. 30.) The ALJ also discussed "the routine and conservative nature of [Plaintiff's] mental health treatment and the record documenting that his mental symptoms were generally adequately controlled during periods of compliance with

his medication regimen." (*Id.*) The record supports the ALJ's conclusion that Plaintiff's limitations were adequately controlled when compliant with medication. (R. 569, 597, 603, 605, 911–12, 934, 936–37, 1005, 1010–1012, 1090.)

The court finds the ALJ has built an accurate and logical bridge from the evidence in the record to his conclusion that Plaintiff had the RFC to perform at the range of medium work with the non-exertional restrictions described above. Substantial evidence supports the ALJ's findings and his decision denying benefits was reached through the application of the correct legal standard. Accordingly, the court affirms the decision of the Commissioner.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #25] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE #36] is GRANTED, and the Commissioner's decision is AFFIRMED.

This 18th day of September 2019.

KIMBERLY A. SWANK
United States Magistrate Judge